UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

Fester Sayonkon,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Criminal No. 16-265(2) ADM/HB

Amber M. Brennan, Assistant United States Attorney, United States Attorney's Office, Minneapolis, Minnesota, on behalf of Plaintiff.

Aaron J. Morrison, Esq., Wold Morrison Law, Minneapolis, MN, on behalf of Defendant.

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Fester Sayonkon's ("Sayonkon") Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) [Docket No. 553] ("Motion").  For the reasons set forth below, the Motion is denied.

## II.  BACKGROUND

On October 30, 2017, a jury returned a verdict finding Sayonkon guilty of conspiracy to commit bank fraud and aggravated identity theft.  Jury Verdict [Docket No. 359].  In a fraudulent scheme lasting more than three years, Sayonkon created counterfeit checks using account information stolen from victim businesses, and negotiated or recruited others to negotiate the counterfeit checks for cash.  He also stole the identity of friends and acquaintances to use their bank account to negotiate and cash counterfeit checks in their names.  Sayonkon used the identity of D.W., a vulnerable adult, to open a bank account in D.W.'s name and used the

account to negotiate counterfeit checks while posing as D.W.  See Presentence Investigation Report ("PSR") [Docket No. 441] ¶¶ 18–55, 58.

After the October 30, 2017 jury verdict, Sayonkon who had been allowed to remain out of custody pending sentencing, cut off his location-monitoring device and fled the jurisdiction. The United States Marshals located him in Toronto, Canada, and he was apprehended by Canadian authorities.  Sayonkon was subsequently extradited and returned to this district on August 9, 2018.

On September 18, 2018, Sayonkon was sentenced to a prison term of 151 months, which constituted a 24-month downward variance from the bottom of Sayonkon's advisory guidelines range.  See Min. Entry [Docket No. 504]; Sentencing J. [Docket No. 505] at 2; Statement Reasons [Docket No. 506].  Sayonkon is incarcerated at Victorville Medium I federal correctional institution in Victorville, California ("Victorville Medium I").  His projected release date is May 14, 2029.  See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed Oct. 1, 2020).  Sayonkon has served approximately 2 years of his 12 year and 7 month sentence, which is less than 20% of his sentence.  Gov't Mem. Opp'n [Docket No. 568] Ex. 1 at 3.  While in prison, Sayonkon has completed several educational courses offered by the Bureau of Prisons ("BOP").  See Def.'s Ex. [Docket No. 574].

Sayonkon now moves for a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Sayonkon, age 42, argues that he suffers from asthma, obesity, and Latent Tuberculosis Infection ("LTBI"), and that these medical conditions place him at a heightened risk of severe illness or death from COVID-19.  Sayonkon states that if he were released from prison the Court could

impose restrictive terms of supervision including home confinement or electronic monitoring.

### III.  DISCUSSION

Generally, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c).  One of the few exceptions to this general rule is the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A).  Under this provision, a court may reduce a term of imprisonment if, "after considering the factors set forth in section 3553(a)," the court finds that "extraordinary and compelling reasons" warrant a sentence reduction, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable policy statement defines "extraordinary and compelling" reasons to include serious medical conditions or cognitive impairments "that substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii).  The policy statement also requires the court to determine that "[t]he defendant is not a danger to the safety of any other person or to the community" before a sentence reduction may be granted under § 3582(c)(1)(A).  See U.S.S.G. § 1B1.13(2).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  The Government agrees that Sayonkon has exhausted his administrative remedies with the BOP

3

because he submitted a compassionate release request to the warden of his facility on May 20, 2020, and had not received a response. See Pro Se Notice [Docket No. 557] Ex. 1; Gov't Mem. Opp'n at 3–4. Accordingly, Sayonkon's Motion is ripe for consideration.

Sayonkon argues his asthma, obesity, and LTBI and the attendant risk for serious COVID-19 complications constitute extraordinary and compelling reasons warranting a sentence reduction. The Court disagrees. Recent guidance from the Centers for Disease Control and Prevention ("CDC") states that people with "moderate to severe" asthma "might" be at an increased risk for severe illness from COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed Oct. 1, 2020). Sayonkon's records show his asthma is mild, and not moderate or severe. When he was interviewed in 2018 for his PSR, Sayonkon reported that he "occasionally suffer[ed] from asthma or shortness of breath and chest pain, but said he had not been treated for any physical health ailments and was not taking any prescribed medication. PSR ¶ 134. He was prescribed an albuterol inhaler only recently, after he reported in a June 2020 medical appointment that he has a history of asthma that is "flaring up again." Def. Ex. [Docket No. 572] at 9–10. At that appointment, Sayonkon's lungs sounded clear and his asthma was not the chief reason for the medical visit. Id. at 9. In an August 2020 medical appointment, Sayonkon reported shortness of breath at night and wheezing. Id. at 1. His lungs again sounded clear. Id. Sayonkon was prescribed a Mometasone Furoate inhaler at this visit. Id. at 2. Even if Sayonkon's mild asthma were to become moderate or severe, the CDC guidelines do not state that people with severe or

moderate asthma are at increased risk for COVID-19 complications, only that they "might" be. Thus, Sayonkon's asthma does not place him at risk of severe illness should he contract COVID-19.  See, e.g., United States v. Dunn, No. 17-CR-168, 2020 WL 4697113, at *5 (D. Minn. Aug. 13, 2020) (denying compassionate release where inmate did not suffer from frequent asthma attacks or describe complications he suffers from his asthma); United States v. Miller, No. 12-cr-00133, 2020 WL 4192895, at *4 (S.D. Ind. July 21, 2020) (denying compassionate release where inmate's asthma was well-controlled); United States v. Wilson, No. 7-cr-132, 2020 WL 4193624, at *2 (M.D. Fla. July 21, 2020) (denying compassionate release to inmate with high blood pressure and asthma where asthma was not alleged to be moderate or severe).

Regarding Sayonkon's LTBI diagnosis, a person with LTBI has tuberculosis germs in their body, but the germs are dormant and do not harm the body or cause a person to feel sick. See https://www.health.state.mn.us/diseases/tb/basics/factsheets/ltbi.html (last accessed Oct. 1, 2020).  LTBI can be treated to prevent active tuberculosis.  Id.  Up to 13 million people in the United States have LTBI.  See https://www.cdc.gov/tb/statistics/ltbi.htm (last accessed Oct. 1, 2020).  As a result of Sayonkon's LTBI diagnosis, the BOP's medical staff ordered a chest x-ray for Sayonkon that was performed on November 1, 2019.  See Def.'s Sealed Ex. [Docket No. 566] at 12, 38.  The chest x-ray showed Sayonkon's lungs were clear and his "cardiomediastinal silhouette" was within normal limits.  Id. at 38.  Based on the x-ray, the physician concluded Sayonkon has "no acute cardiopulmonary disease," his "lungs are clear," and his heart size is "within normal limits."  Id.

Sayonkon also contends his weight places him at risk of severe COVID-19 complications.  According to the CDC, a person with a body mass index ("BMI") of 30 or higher

5

is at increased risk of severe illness from COVID-19.  See

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-condit

ions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%

2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed Oct. 1, 2020).

Sayonkon's BMI is 28, meaning he is not at an increased risk for severe illness.  See Def.'s

Sealed Ex. at 3.  Accordingly, Sayonkon's medical conditions do not constitute an extraordinary

and compelling reasons to reduce his sentence.

In addition to the absence of compelling and extraordinary circumstances, the Court cannot conclude that Sayonkon "is not a danger to the safety of any other person or to the community." See U.S.S.G. § 1B1.13(2).  Although Sayonkon's offenses were not violent, he victimized others, including his friends and a vulnerable adult, by stealing their identities to commit his crimes.

The sentencing factors in § 3553(a) also weigh against reducing Sayonkon's sentence. These factors include "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a).  When sentencing Sayonkon, the Court determined that a 151-month term of imprisonment was necessary to carry out these sentencing goals.  Sentencing Hr'g Tr. [Docket No. 513] at 35–36. Releasing Sayonkon after serving only two years, less than 20% of his sentence, would substantially undermine these sentencing considerations.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Fester Sayonkon's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) [Docket No. 553] is **DENIED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT

Dated:  October 2, 2020